# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

JOSEPH L. WESTBROOK, )
)
        **Plaintiff,** )
)
v. ) Case No. CIV-08-126-SPS
)
MICHAEL J. ASTRUE, )
Commissioner of the Social )
Security Administration, )
)
        **Defendant.** )

**OPINION AND ORDER**

The claimant Joseph L. Westbrook requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court

---

[1] Step one requires the claimant to establish he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on May 7, 1979, and was twenty-seven years old at the time of the administrative hearing. He has a GED and previously worked as a general laborer. The claimant alleges he has been disabled since June 1, 2003, because of anxiety disorder, personality disorder, reading and spelling disorder, bipolar disorder, obesity, and bilateral conductive hearing loss.

**Procedural History**

On January 6, 2005, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Both applications were denied. ALJ Lantz McClain conducted a hearing and determined the claimant was not disabled on May 9, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work, *i. e.*,

that he could lift and/or carry ten pounds frequently and ten pounds occasionally; stand and/or walk for at least two hours in an eight-hour workday; and sit for at least six hours in an eight-hour workday. The claimant was to "avoid concentrated exposure to noise," and his mental limitations included performing "no more than simple repetitive tasks . . . and no more than incidental contact with the public." (Tr. 16). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform existing in significant numbers in the regional and national economies, *e. g.*, clerical mailer and semi-conductor assembler (Tr. 20).

**Review**

The claimant's sole contention is that the ALJ erred by improperly evaluating the medical evidence with regard to his mental impairments. He specifically argues that the ALJ failed to properly consider the opinions from consulting psychologist Dr. Donna Noland, Ph.D., and the intake evaluation from the Blue Sky Behavioral Health Clinic. The Court finds this argument persuasive.

The record reveals that the claimant underwent a mental status examination with Dr. Noland in May 2005. She noted that the claimant's appearance was appropriate and he was cooperative and responsive to questions. The claimant reportedly heard voices and saw female figures in his home that were really not there, but Dr. Noland noted "no indications of active psychotic thought process[.]" The claimant's affect during the examination appeared irritable, he exhibited current suicidal ideation (without plan or attempt), and had

previously attempted suicide. His symptoms of depression included "suicidal ideation, irritability, weight gain, sleep disturbance, thoughts of death, low energy level, depressed mood most days, psychomotor agitation, hopelessness, inability to think or make decisions, and feelings of worthlessness." Dr. Noland found the claimant's contact with reality was good, his immediate memory was high average, and long-term memory was adequate. He exhibited some problems with recall. His knowledge of the world around him was noted to be low average, he did calculations on his fingers, and gave correct interpretations of proverbs associated with abstract thinking. Dr. Noland found that based on his cognitive functioning and social and emotional considerations, the claimant's judgment was poor. His IQ was estimated to be in the average range (90 or higher). She also evaluated the claimant's adaptive functioning, noting he could communicate appropriately but reported being angered easily. Dr. Noland indicated the claimant's ability to deal with the public was impaired and his ability to function independently was poor. The claimant's wife took care of the finances. His ability to concentrate appeared adequate and no significant problems with persistence and pace were found. The claimant attended special education classes, and Dr. Nolan noted he exhibited "significant limitations in social skills, work, health, and personal safety." Although his memory appeared intact, "[h]is ability to understand, remember and carry out instructions [was] below average." Based on the examination findings, Dr. Nolan concluded the claimant would need assistance with funds. She assessed the claimant with bipolar disorder and indicated schizoaffective disorder needed to be ruled out. She also noted

problems with the primary support group, problems related to the social environment, problems accessing health care services, occupational problems, and economic problems. She assigned the claimant a Global Assessment of Functioning ("GAF") score of 34. She commented that his "barriers to employment are his physical problems (hearing impairment), emotional issues, and social problems[,]" and encouraged him to seek mental health treatment (Tr. 200-07).

The claimant began receiving treatment at Blue Sky Behavioral Health, Inc., in January 2006. On his psychosocial evaluation, he reported anxiety and problems controlling his anger. He was assigned a current GAF score of 45 with the highest score in the past year as 49 (Tr. 275-79). He retained the same GAF score in February 2006 (Tr. 280). By March 2006, the claimant reportedly was not suicidal but felt depressed, isolated, withdrawn, and had a volatile temper. His identified problem areas included anger problems, isolating behavior, and a history of abuse and neglect. During his examination, he appeared alert but disheveled and anxious. He was assessed with bipolar disorder and prescribed medication (Tr. 281-82).

The ALJ determined that the claimant's anxiety, personality, and bipolar disorders were severe impairments (Tr. 15) and concluded that he had the mental RFC for "no more than simple repetitive tasks; and no more than incidental contact with the public." (Tr. 16). The ALJ did not, however, properly analyze critical findings by Dr. Noland and Blue Sky Behavioral Health regarding the claimant's mental limitations, *i. e.*, his GAF scores.

Blue Sky Behavioral Health assigned the claimant a GAF score of 45. "[A] GAF score between 41 and 50 indicates [s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e. g., no friends, inability to keep a job)." *Lee v. Barnhart*, 117 Fed. Appx. 674, 678 (10th Cir. 2004) [quotation omitted] [unpublished opinion]. Dr. Noland assigned the claimant an even lower GAF score of 34. "A GAF of 31-40 is extremely low, and indicates [s]ome impairment in reality testing or communication . . . [or] major impairment in reality testing or communication . . . [or] major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Salazar v. Barnhart*, 468 F.3d 615, 624 n. 4 (10th Cir. 2006) [quotation omitted]. "Although the GAF rating may indicate problems that do not necessarily relate to the ability to hold a job," *Oslin v. Barnhart*, 69 Fed. Appx. 942, 947 (10th Cir. 2003) [unpublished opinion], "[a] GAF score of fifty or less . . . *does* suggest an inability to keep a job." *Lee*, 117 Fed. Appx. at 678 [emphasis added], *citing Oslin*, 69 Fed. Appx. at 947. Thus, the ALJ should have considered whether the claimant's substandard GAF scores were due to occupational factors. *See*, *e. g.*, *Givens v. Astrue*, 251 Fed. Appx. 561, 567 n. 4 (noting that "the Commissioner argues that a low GAF score may indicate problems that do not necessarily relate to the ability to hold a job[,]" but finding that "[e]ven assuming this is true, the ALJ's decision does not indicate he reached the conclusion that Ms. Givens' low GAF score was due to non-occupationally-related factors.") [quotation marks omitted] [unpublished opinion]. Instead, the ALJ ignored the GAF score assigned by

Blue Sky Behavioral Health (although he otherwise relied on its records as supportive of his RFC determination) and dismissed the GAF score assigned by Dr. Noland as "inconsistent with her examination and testing, and [apparently] based on the claimant's subjective complaints" (Tr. 19).

To the extent the ALJ provided any analysis for rejecting the claimant's substandard GAF scores, that analysis was clearly deficient. The ALJ failed to specify any examination or testing that he found to be inconsistent with the GAF score assigned by Dr. Noland, and the other reason he gave for rejecting the score (that it was based upon the claimant's subjective complaints) was both irrelevant and incorrect, *i. e.*, it was clearly permissible for Dr. Noland to rely on the claimant's subjective complaints, *see*, *e. g.*, *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759-60 (10th Cir. 2005) (finding that "[t]he practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements[,]" and that when a ALJ rejects an opinion on such a basis, it "impermissibly put[s] the ALJ in the position of judging a medical professional on the assessment of medical data.") [unpublished opinion], *citing Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996), but she relied on other evidence as well, including her own examination findings that the claimant exhibited significant limitations in social skills, work, health, and personal safety and had problems with his primary support group, problems related to the social environment, problems accessing health care services, occupational problems, and economic problems.

Because the ALJ failed to properly analyze whether the claimant's substandard GAF scores reflected occupational limitations, the decision of the Commissioner must be reversed and the case remanded for further analysis. If such analysis results in changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 19th day of August, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**